IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

JAMES FAULDS, Jr.,           )
                             )
          Petitioner,        )
                             )
  v.                         )        No. 11-cv-3037
                             )
UNITED STATES OF AMERICA,    )        (*Challenging Conviction and*
                             )        *Sentence in Case No. 07-cr-20004*)
          Respondent,        )

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

Petitioner James Faulds' Motion to Vacate, Set Aside or Correct Sentence

[d/e 1, 1-1] is before the Court.

It is denied.

I.

The following factual background regarding Faulds' criminal case comes

from an opinion of the U.S. Court of Appeals for the Seventh Circuit:

> On July 16, 2006, while investigating in an undercover capacity
> crimes of child exploitation, James Mooney, a special agent with U.S.
> Immigration and Customs Enforcement ("ICE"), logged into an Internet
> chat room called "aLLgirls." Special Agent ("S.A.") Mooney knew from
> previous experience that people used that chat room to trade images of
> preteen females engaged in sexually explicit conduct. When Mooney
> entered the room, Faulds' computer was already logged onto the same chat
> room under the screen name "Wscrypt."
>
> S.A. Mooney made a direct, "client-to-client" connection with
> Faulds' file server, which had 2,751 files available, consisting of 1.22

1

gigabytes of images and 34 folders. One of the folders labeled "Mar" contained a six-page listing of images. Mooney knew, also from his previous experience, that "Mar" contained images of child pornography. He downloaded 12 images from the "Mar" folder and a movie from a folder labeled "Girlvids." The "Mar" images depicted a 6- or 7-year-old girl being sexually abused. The movie showed sexual abuse of an 11- or 12-year-old girl.

The software S.A. Mooney was using allowed him to determine the IP address for Wscrypt and the service provider for the account. In response to a subpoena to the service provider, Mooney learned Faulds' name and that he lived in Rankin, Illinois. Mooney, who was stationed in Portland, Oregon, then forwarded the results of his investigation to ICE Special Agent Michael Mitchell in Springfield, Illinois.

On August 18, 2006, S.A. Mitchell and other law enforcement agents in central Illinois executed a search warrant on the home where Faulds was living with his parents. From his bedroom, they seized computers, CDs, and a DVD that contained Faulds' extensive pornography collection, much of which included child pornography. In the course of their search, the officers also spoke with Faulds who admitted that he collected child pornography and shared it with others through filesharing computer software.

From their examination of the material seized from Faulds' bedroom, law enforcement determined that the various items contained a total of 9,869 pornographic images of children and 719 pornographic movies involving children. The "Mar" folder alone contained more than 300 pornographic pictures of the same 6- or 7- year-old girl. In addition, the 12 images that S.A. Mooney had downloaded from Faulds' server on July 16 were still on Faulds' computer when agents seized it on August 18, 2006.

*United States v. Faulds*, 612 F.3d 566, 567-68 (7th Cir. 2010).

On January 4, 2007, a grand jury sitting in Urbana, Illinois, returned a two-count indictment against James Faulds, Jr., charging him with both possessing and distributing child pornography.  *See* Indictment [d/e 1], in Case No. 07-cr-20004. The case was assigned to U.S. District Judge Michael P. McCuskey.

Faulds appeared before a magistrate judge, who appointed an assistant federal public defender to represent him, and Faulds was released on bond. *See* Minute Entry of January 8, 2007, in Case No. 07-cr-20004. Trial was scheduled for May 2007. *See* Minute Entry of February 23, 2007, in Case No. 07-cr-20004. On March 27, 2007, Faulds appeared before Judge McCuskey, was sworn, and pled guilty to both counts. *See* Minute Entry of March 27, 2007, in Case No. 07-cr-20004. Bond was revoked and a sentencing hearing was scheduled. *See id.*

On July 17, 2007, Faulds filed a pro se motion to withdraw his guilty plea. *See* Pro Se Motion to Withdraw Plea of Guilty [d/e 12] , in Case No. 07-cr-20004. The Court allowed the Motion, appointed new counsel under the Criminal Justice Act (CJA), and eventually allowed Faulds to be on bond once again. *See* Minute Entry of July 20, 2007; Minute Entry of September 19, 2007; Minute Entry of October 17, 2007, in Case No. 07-cr-20004.

The jury trial was scheduled to begin on February 25, 2008, at 9:00 a.m. On that morning, Faulds filed a pro se motion and announced his intention to represent himself. *See* Minute Entry of February 25, 2008; Pro Se Motion [d/e 47], in Case No. 07-cr-20004. The Court allowed his request to represent himself, but directed CJA counsel to be stand-by counsel for the remainder of the proceedings. *See* Minute Entry of February 25, 2008, in Case No. 07-cr-20004. The Court warned Faulds of the risks involved in pro se representation in a criminal trial and provided

a sheet of guidelines for pro se parties. *See* Guidelines for Pro Se Parties [d/e 48],

in Case No. 07-cr-20004. The jury was selected on the afternoon of February 25,

2013. Opening statements began on the morning of February 27, 2008.

The Court of Appeals has summarized the events of trial as follows:

> Over the course of the trial, in addition to the testimony of S.A.
> Mooney and S.A. Mitchell, the government introduced a number of
> exhibits, including the images and movie that S.A. Mooney received after
> remotely accessing Faulds' computer from Portland. Faulds' father testified
> about his son's computer knowledge and his exclusive Internet access in
> their home, and a local detective testified about Faulds' admissions about
> his possession and distribution of child pornography. The computers, CDs,
> and DVD seized from Faulds' bedroom were also offered and received.
> The government briefly published to the jury the 12 images and the movie
> S.A. Mooney received. It also published a few additional images S.A.
> Mitchell found on Faulds' computers and CDs. Other depictions were
> described to the jury.

> For his defense, Faulds denied that he had made any inculpatory
> statements to law enforcement and denied knowledge of the child
> pornography found on his computer. Faulds theorized that someone had
> accessed his computer remotely, uploaded child pornography to the
> computer's hard drive, and burned pornographic images to a CD in the
> computer's CD tray. . . .

*Faulds*, 612 F.3d at 568 (7th Cir. 2010).

On February 29, 2008, the jury returned verdicts of guilty on both counts.

*See* Jury Verdict [d/e 54], in Case No. 07-cr-20004.

Faulds was remanded to the custody of the Marshal, and stand-by counsel

was allowed to file post-trial motions on behalf of Faulds. *See* Minute Entry of

February 29, 2008, in Case No. 07-cr-20004.

Faulds was sentenced on September 8, 2009, to 360 months imprisonment (240 months on Count 1, 120 months on Count 2, to be served consecutively).  *See* Minute Entry of September 8, 2009, in Case No. 07-cr-20004.  Faulds' Notice of Appeal was docketed on September 10, 2009.  *See* Notice of Appeal [d/e 100], in Case No. 07-cr-20004.

The Court of Appeals appointed a different lawyer to represent Faulds on appeal.  Oral argument was held on April 19, 2010, and the conviction and sentence were affirmed on July 8, 2010.  *See* Mandate [d/e 108], in Case No. 07-cr-20004; *United States v. Faulds*, 612 F.3d 566 (7th Cir. 2010).  The Supreme Court denied Faulds' petition for writ of certiorari on January 10, 2011.  *See Faulds v. United States*, 131 S. Ct. 949 (2011).

The CJA attorney who represented Faulds during pre-trial proceedings and who acted as standby counsel for the remainder of the case will be referred to as "CJA counsel" throughout the remainder of this Opinion.  The attorney appointed to represent Faulds on appeal will be referred to as "appellate counsel."[1]

## II.

Faulds filed his Motion to Vacate, Set Aside or Correct Sentence [d/e 1, 1-1] on January 24, 2011.  The Motion spans 140 pages, and raised thirty grounds for

---

[1] Of course, appellate counsel was appointed pursuant to the Criminal Justice Act, but the Court is adopting this nomenclature to distinguish between the two attorneys.

relief.  In addition, Faulds filed exhibits [d/e 1-2] covering 52 pages, including an eight-page affidavit.

The Government filed a Response [d/e 12] on May 13, 2011.  The Government argued that twenty-three of the thirty grounds raised relate to issues that appellate counsel failed to raise on appeal, and are wholly without merit.  The Government argued that the remaining seven claims are also without merit.

Faulds filed a 100-page Reply [d/e 14], accompanied by thirty-six pages of exhibits [d/e 14-1].

### III.

In order to establish a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient and that he was prejudiced as a result.  *See Strickland v. Washington*, 466 U.S. 668 (1984).

In order to demonstrate ineffectiveness, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 687-88.

"Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest.  From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's

cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of prosecution." *Id.* at 688 (citation omitted).

"These basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all of the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel's conduct or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* at 689.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* (citations and quotation marks omitted).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id.* at 686.

"The defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"When a defendant challenges a . . . [sentence] . . . , the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant [the sentence imposed]." *Id.* at 695.

"Appellate counsel's performance is similarly measured against that of an objectively reasonable attorney.  An appellate counsel's performance is deficient if she fails to argue an issue that is both obvious and clearly stronger than the issues raised.  However, counsel is not required to raise every nonfrivolous issue on appeal." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010) (citations omitted).

"To prevail, [a petitioner] must show that there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Id.*

IV.

In large measure, Faulds seeks to obtain relief by "recasting" his poor performance at trial as ineffective assistance by either the Public Defender, CJA Counsel, or Appellate Counsel.

Courts generally see past these efforts to "recast" the blame, and reject them. *See United States v. Egwaoje*, 335 F.3d 579, 587 (7th Cir. 2003); *United States v. Windsor*, 981 F.3d 943, 947 (7th Cir. 1992).

The Court sees through Faulds' feeble attempt to recast the blame, and rejects it.

V.

The Court will address the grounds for relief raised by Faulds.  Some require more analysis than others.

### Ground 1—Public Defender and CJA Counsel were ineffective because they failed to interview witnesses who had been named by Faulds

This claim relates to Faulds' issues regarding a network security expert.

This issue is fully addressed in Ground 13.

The Court concludes that this claim is meritless.

### Ground 2—Appellate Counsel was ineffective for not appealing the obstruction of justice enhancement

Appellate attorneys are not required to raise every non-frivolous issue on appeal. *Brown*, 598 F.3d at 425. Appellate counsel have to make strategic decisions regarding which issues to raise on appeal, and are ineffective only when they fail to raise issues that are more obvious and stronger than those raised. *Id.* To prevail, Faulds would have to show that there is a reasonable probability that the outcome would have been different if the issue had been raised. *Id.*

Faulds is unable to do so because the enhancement was completely justified.

### Ground 3—Appellate Counsel was ineffective on appeal for failing to raise allegations that Judge McCuskey had inappropriate communications with jurors and improperly pressured them to return a swift verdict

Faulds has raised very serious allegations against Judge McCuskey.

They are without any support from the record.

Faulds cites the record twice for instances of alleged misconduct.

The first took place on the first day of trial, after spending nearly three hours waiting for Faulds to arrive and resolving numerous issues, including pro se

representation.  The jury had not been selected yet, and the venire had been waiting during that time.  Judge McCuskey stated the following: "I've got to go to talk to the jurors about last-minute questions.  Be in recess for at least 20 minutes."  Trial Transcript [d/e 64], in Case No. 07-cr-20004, p. 54.

This was innocuous.  It is not uncommon for judges in this district to address potential jurors while they are gathered in the jury assembly room.  This is generally used as an opportunity to field any questions about the process, explain a delay and thank them for their patience.  Judges sometimes visit the jurors in the jury assembly room when there has been some unexpected problem or a change in circumstances (a case settles or gets pled out at the last minute).

The second instance is even more harmless.  Faulds states that the jurors were given the case on a Friday, and alleges that Judge McCuskey threatened the jurors that if they "did not return the verdicts that day they will come back the next day to deliberate more."  Motion [d/e 1], p. 16.

This is false.  The passage cited by Faulds is from Thursday evening, after the jury had already been excused for the day.  *See* Trial Transcript [d/e 64], in Case No. 07-cr-20004, p. 602.  The Court was holding a conference regarding upcoming witnesses and jury instructions outside the presence of the jurors.  So Judge McCuskey's statement was not to the jury.

There was no threat that they would have to deliberate on Saturday.  Instead, he said that he would suggest that they do so, but that the choice was theirs.  *See Id.* at 626 ("I just want you to know I'm going to suggest that they come back to deliberate on Saturday.  They may say, 'No, Monday.'").

Judge McCuskey explained that the Courthouse would be open on Saturday because he and security personnel would be there to host tours of the building by the Boy Scouts.  *Id.*

### Ground 4—Faulds received ineffective assistance of counsel: Public Defender failed to file a motion to suppress statements and CJA Counsel withdrew motion to suppress statements

Faulds claims that his inculpatory statements were not made voluntarily, because the agents came to his work site and ordered him to return home, the agents who interviewed him were very skilled interrogators, and Faulds and his family felt as if they were trapped in their home when the agents were there.[2]  In support, Faulds has supplied affidavits from himself, his mother, and sister.  *See* Affidavits [d/e 1-2], pp. 1-11.

Faulds was allowed to drive his own car from his work site back to his house, and was not placed under arrest during his contact with law enforcement.

---

[2]  The Court notes that Faulds' claim is an almost verbatim copy of the Motion to Suppress [d/e 30], Case No. 07-cr-20004, filed by CJA Counsel.

Any limited detention of Faulds' relatives during the execution of the search warrant would not have been inappropriate. *See Michigan v. Summers*, 452 U.S. 692 (1981).

In order to have prevailed on the Motion to Suppress, CJA Counsel would have had to demonstrate that Faulds' interaction with law enforcement was not voluntary. An evidentiary hearing would have been held, and Faulds' testimony would have been critical to the success of the Motion to Suppress.

Faulds had already admitted to Judge McCuskey that he had lied under oath during proceedings in this case.

It does not appear that counsel was ineffective regarding the suppression of those statements.

### Ground 5—Faulds received ineffective assistance of counsel because Public Defender and CJA Counsel failed to get evidence suppressed, and because Appellate Counsel failed to raise this issue on appeal

Faulds claims that the search was improper, because (1) in applying for the warrant and completing his affidavit, S.A. Mitchell included information received from S.A. Mooney, who was based in Oregon, (2) the search warrant was overly broad in scope,[3] because the justification for the broad scope came from S.A. Mitchell's general experience with child pornography cases rather than the

---

[3] Faulds objects to the warrant's authorization to search Faulds' personal property. He claims the warrant should have been limited the search to only those computers with an active internet connection.

13

specifics of this case, (3) that an inventory of items was not prepared, and (4) Faulds was not provided a complete copy of the warrant when it was executed.

This claim is without merit.

The Court has reviewed the application for search warrant, the search warrant, and other related documents. *See* Search Warrant Materials [d/e 1-2], pp. 14-38.

Law enforcement officers may use hearsay statements in affidavits for search warrants. *See Jones v. United States*, 362 U.S. 257, 271-72 (1960) ("We conclude therefore that hearsay may be the basis for a warrant. . . . as hearsay alone does not render an affidavit insufficient, the Commissioner need not have required the informants or their affidavits produced . . . so long as there was a substantial basis for crediting the hearsay") (overruled on other grounds); *Rugendorf v. United States*, 376 U.S. 528, 533 (1964); *Franks v. Delaware*, 438 U.S. 154, 165 (1978); *United States v. Carmichael*, 489 F.2d 983, 986 (7th Cir. 1973).

Faulds' overbreadth arguments are unpersuasive. It is not unreasonable for a magistrate judge to authorize a broad warrant under these circumstances.

The remaining arguments are unavailing.

### Ground 6—Appellate Counsel was ineffective because she failed to raise on appeal remarks made by the prosecutor that were highly prejudicial

As detailed above, to prevail, Faulds would have to show that there is a reasonable probability that the outcome would have been different if the issue had been raised.

He cannot do so on this claim.

The Court has carefully reviewed the passages from the trial transcript cited by Faulds.  *See* Motion [d/e 1], pp.38-39; Trial Transcript [d/e 65], pp. 93, 95, 96, 99, 100, 103.

Almost all of the allegedly prejudicial prosecutorial statements merely describe the evidence that would be presented at trial.

There were some statements that reflected conclusions.  The prosecutor warned the jurors of the graphic nature of the evidence, saying "it probably will be the most vile things you will ever see."  Trial Transcript at 95.  He also characterized Faulds as "one of the promoters, salesmen of child pornography." *Id.* at 93.  The evidence adduced at trial showed that Faulds was actively bartering child pornography on a very large scale.

The Court concludes that the statements were not inappropriate and that there is not a reasonable probability that Faulds would have prevailed had the issue been raised on appeal.

15

**Ground 7—Appellate Counsel was ineffective because she
failed to argue on appeal that Faulds did not knowingly and voluntarily
waive his right to be represented by counsel when he elected to proceed pro se**

Faulds exercised poor judgment in deciding to represent himself, and now
wants to blame Appellate Counsel for the consequences, because he claims she
should have raised his self-representation on appeal.

Faulds argument is meritless.

There was some discussion regarding the appropriate procedure for ensuring
that Faulds was knowingly and voluntarily deciding to represent himself. *See* Trial
Transcript [d/e 64], p. 23. Judge McCuskey indicated that he had in front of him
the Benchbook for U.S. District Court Judges (5th ed. 2007), published by the
Federal Judicial Center. *Id.* Judge McCuskey said that he had the book open to
page six, which covers procedures for allowing a defendant to represent himself.
*Id.*

After discussion of other pending matters, Judge McCuskey
conducted—almost verbatim—the inquiry as set forth in the Benchbook. *Compare*
Benchbook for U.S. District Court Judges (4th ed. 1996, March 2000 rev.) *with*
Trial Transcript [d/e 64], pp. 38-52. In addition to covering the basic questions,
Judge McCuskey also took time to (1) discuss with Faulds and CJA Counsel the
mechanics of how CJA Counsel would act as standby counsel, (2) discuss in more
depth the Presentence Investigation Report and the Sentencing Guidelines, and (3)

take a fifteen minute recess to allow Faulds to reconsider his decision and consult with standby counsel.  *See* Trial Transcript [d/e 64], pp. 38-52.  In fact, Judge McCuskey anticipated that Faulds might someday try to bring this very claim and engaged in the following colloquy:

| | |
|---|---|
| THE COURT: | And knowing all that, you still want to proceed as your own counsel? |
| DEFENDANT FAULDS: | Yeah. |
| THE COURT: | Okay.  And you know you're doing that at your own peril; that's not, in effect, not a defense or an appeal that "I exercised my constitutional right to represent myself, and it wasn't a good choice." |
| DEFENDANT FAULDS: | Yeah.   That's not a grounds for ineffective assistance of counsel.  I understand that. |
| THE COURT: | Or an appeal because you can't be ineffective exercising your own constitutional rights.  I mean, if you don't do a good job, that's your choice at your peril.  You understand that? |
| DEFENDANT FAULDS: | Yeah. |

*See id.* at 49-50.

There is no reason to believe that had Appellate Counsel raised this issue on appeal the outcome would have been any different.

### Ground 8—Appellate Counsel was ineffective because she failed to argue that the Government did not adequately prove the interstate nexus of the offense

This argument is meritless.

At trial, the Government presented overwhelming evidence of an interstate nexus regarding both of the counts of conviction. Regarding the possession charge, the Government brought in a law enforcement officer from Richland Police Department, Richland, Washington, who investigated the underlying sexual abuse portrayed in one group of depictions found in Faulds' possession (commonly referred to as the "Vicky series."). *See* Trial Transcript [d/e 65], pp. 178-87. The Government also presented testimony from an FBI special agent based in North Carolina, who worked with another group of depictions ("Jan_Feb" series), which originated from North Carolina. *See* Trial Transcript [d/e 65], pp. 196-204.

Regarding the distribution charge, the Government presented testimony from an ICE special agent in Oregon that was able to access Faulds' child pornography collection through the internet. *See id.* at 118-78. The agent was able to download child pornography from Faulds' collection. *See id.* at 148-51. There is no reason to believe that had Appellate Counsel raised this issue on appeal the outcome would have been any different.

### Ground 9—Appellate Counsel was ineffective because she failed to argue on appeal that the District Court erred in denying Faulds' motion for a continuance

On the date of trial, Faulds was represented by competent counsel who by all indications was prepared to proceed. From the Court's review of the transcript it appears that Faulds had been planning to proceed pro se and preparing to represent himself, but had failed to inform his attorney or the Court. *See* Trial Transcript [d/e 64], pp. 3-36. Faulds, while on bond, failed to appear in a timely fashion to his own trial and then submitted pro se filings requesting permission to proceed pro se and for a continuance of the trial. Judge McCuskey carefully weighed the request at some length.

After carefully reviewing the record, it does not appear that Judge McCuskey abused his discretion. *See* Trial Transcript [d/e 64], pp. 3-36.

There is no reason to believe that had Appellate Counsel raised this issue on appeal the outcome would have been any different.

### Ground 10—Appellate Counsel was ineffective because she failed to argue that the Government failed to comply with Fed. R. Crim. P. 16, because Faulds allegedly did not receive the discovery materials he claims he was entitled to receive

The Court will assume for the purposes of resolving this Section 2255 claim that the Government did violate Federal Rule of Criminal Procedure 16 in failing to provide discovery materials to Faulds and his attorneys.

First, Faulds is again recasting his own errors as pro se trial counsel as errors committed by Appellate Counsel.

Second, even if Faulds could demonstrate (1) that these materials were not turned over as required by the Rule, and (2) that his Appellate Counsel was ineffective for failing to argue the issue on appeal, the claim would fail because he would be unable to show prejudice.   It is unclear how having these materials ahead of trial would have made any difference, especially considering Faulds' last-minute decision to represent himself, his poor performance as pro se trial counsel, and the fact that the evidence of his guilt was overwhelming.

The Court concludes that there is not a reasonable probability that had Appellate Counsel raised this issue the result of the appeal would have been different.

### Ground 11—Appellate Counsel was ineffective because she failed to argue that the District Court erred in enhancing Faulds' sentence based upon facts that were not determined by the jury or admitted by Faulds

This claim is groundless.

*Apprendi* stands for the proposition that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  The Supreme Court clarified in *Blakely* that "statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S.

296, 303 (2004) (quotation marks omitted).  In *Booker*, the Supreme Court made the guidelines advisory and held that *Apprendi* does not apply to the advisory guideline system.  *United States v. Booker*, 543 U.S. 220, 259 (2005).

Faulds argues that these holdings were violated when the district judge who sat through the jury trial applied sentencing enhancements based on a preponderance of the evidence.  He is incorrect.

Based on the jury verdict, Faulds was subject to a statutory range of five to twenty years on Count One and zero to ten years on Count Two.  At sentencing, Faulds was sentenced to the statutory maximum on each count, to run consecutive to each other.  The enhancements—which were imposed by the judge and not the jury—were made under the advisory guidelines, which suggested imposing the harshest sentence available under the statutory scheme.  This was not an *Apprendi* violation.

### Ground 12— Appellate Counsel was ineffective because she failed to argue that Faulds' 360-month sentence was substantively unreasonable

Appellate Counsel was not ineffective in this regard.

"A sentence is reasonable if the district court gives meaningful consideration of the factors listed in section 3553(a) and the resulting sentence is objectively reasonable in light of the statutory factors and the individual circumstances of the case.  The court need not consider all the factors but must give an adequate

statement of reasons for thinking the sentence it selects is appropriate.  A sentence

within the relevant guidelines range is presumed to be reasonable on appeal."

*United States v. Harris*, 718 F.3d 698, 705 (7th Cir. 2013) (citations, quotation

marks, and ellipses omitted).

As discussed below in Ground 17, Judge McCuskey fully addressed the

relevant sentencing factors and applying them to the circumstances of the case and

Faulds' background.[4]  *See* Sentencing Transcript [d/e 105], pp. 71-80.

Judge McCuskey's explanation adequately shows why he imposed the

sentence.  It appears that a substantive reasonableness challenge would have been

unsuccessful.

### Ground 13—CJA Counsel was ineffective because he failed to timely move for funds to secure a network security expert

---

[4]  Of particular note are Judge McCuskey's comments on the nature and circumstances of the offense.  Judge McCuskey addressed Faulds' perjury and obstruction of justice during the pendency of the case, noting that he had never seen this kind of conduct in his twenty-one years on the bench.  *See* Sentencing Transcript [d/e 105], pp. 72-73.  He also stated that the images Faulds trafficked were among the most severe he had seen, and that the volume of images traded was significant:

So, you're not just a child pornographer.  You are the child pornographer that I've never seen in 21 years [on the bench].  Everything I've seen, you beat. . . .

From the records, 572 visits to Faulds's file server, 1369 downloads of child pornography by others, 4,212 uploads of child pornography to your computer, visitors to your file server from over 26 countries, 63,297 images.  This jury saw a mere handful involving . . . sadomasochism, violence, bestiality, all involving the degradation of children, and you say to me, "I never did harm or tried to."

Well, you gave this out to everybody in the world, including people you knew were minors.  That does harm to children. . . .

Sentencing Transcript [d/e 105] at 75-76.

Faulds' theory of his criminal case was that another person, affiliated with the Government, remotely gained access to his computer and that this third party was responsible for the possession and transmission of child pornography.

Faulds argues the following:

> The facts of the case are this: the funds for a network security expert were available under 18 U.S.C. §§ 3000A(e)(1), that a 3rd party controller put child pornography on Faulds computer was a critical issue, that counsel was aware of the critical issue and that lead counsel to make only "half-hearted" attempts to obtain independent evidence regarding a 3rd party controller and abandoned these efforts to find a 3rd party controller has no strategic purpose, and filing an untimely motion was not professionally reasonable.

> . . . The decision of defense counsel in filing a untimely motion for funds and not to pursue network security expert was neither a strategic choice made after investigation, nor a strategic choice made in light of limits of investigation. There were no limitations; funds were available if counsel would have filed a timely motion.

> . . . This court should hold that counsel filing a untimely motion for funds, when he had ample time to do so since November 2007 was not professionally reasonable.

Motion [d/e 1], pp.71-72:

On November 16, 2007, CJA Counsel sought appointment of a computer expert. *See* Motion to Appoint Expert in Computers [d/e 34], in Case No. 07-cr-20004. Counsel attached to the Motion the resume of a proposed expert—an individual with a master's degree in computer science who worked in information technology (IT) at the University of Illinois, Springfield, and had worked in IT at the Chicago Tribune. *See* Expert Professional Resume [d/e 34-1].

The Court granted the Motion a few days later, and authorized up to $1,600 for CJA Counsel to obtain an expert.  *See* Text Order of Nov. 19, 2007, in Case No. 07-cr-20004.

On November 30, 2007, CJA Counsel filed a document with the Court stating that the computer expert would be conducting a forensic examination of Faulds' computer on December 3, 2007, at the U.S. Attorney's Office.  Disclosure in Compliance with Final Pre-Trial Conference Requirements [d/e 35], ¶ 2.D.  CJA Counsel wrote: "Whether [the expert] testifies in this cause depends on the outcome of the results of [the forensic examination].  We anticipate that [the expert] will find that, in fact the computer was accessed by third parties from a remote location."  *Id.*

The trial date was continued, and the Defense was told that the computer expert was to file his report by February 4, 2008, if it was to be used at trial.  *See* Minute Entries of Dec. 3, 2007 & Jan. 14, 2008, in Case No. 07-cr-20004.  CJA Counsel did not list the computer expert as a potential witness in a document filed on February 7, 2008.  *See* Notice [d/e 44], in Case No. 07-cr-20004.

On February 21, 2008, the Court held a telephonic status conference, and Judge McCuskey denied Faulds' oral, pro se motion for an additional expert and to continue the trial.  *See* Text Order of Feb. 21, 2008, in Case No. 07-cr-20004.  The

oral motion was denied, and the jury trial remained set for February 25, 2008.  *See id.*

When Faulds showed up late for his trial on February 25, 2008, he handed the Court a pro se motion seeking reconsideration of the decision rendered on February 21, 2008.  *See* Pro Se Motion [d/e 47], in Case No. 07-cr-20004.  Faulds sought to continue the trial, suppress the evidence, proceed pro se, and to have an information security witness appointed as a defense expert.  *See id.*

Essentially, Faulds viewed the expert secured by CJA Counsel as inadequate, characterizing him as a forensic expert.  *See id.*  Faulds contended that a network security expert was needed to adequately prove his theory of the case.  *See id.*

There was lengthy discussion regarding Faulds' request for an expert on the morning of February 25, 2008.  *See* Trial Transcript [d/e 64], pp. 13-36.  The discussion held at that time demonstrates the efforts that CJA Counsel and the retained expert made to see if Faulds' theory of the case could be corroborated.

CJA Counsel was diligent.  This claim is without merit.

25

**Ground 14—Public Defender and CJA Counsel were ineffective
because they failed to do legal research, review the testimony of key
witnesses (including Faulds' testimony), and they were not familiar
with readily available documents necessary to understanding Faulds' case**

Faulds accusations against the Public Defender and CJA Counsel are not
supported by the record, and he provides little detail on how they were allegedly
unprepared.  The Court concludes that this claim is not meritorious.

**Ground 15—Appellate Counsel was
ineffective because she failed to argue that the case should be
remanded pursuant to Circuit Rule 36 because Judge McCuskey
allegedly threatened to impose the maximum sentence if Faulds went to trial**

Circuit Rule 36 provides the following:

**CIRCUIT RULE 36. Reassignment of Remanded Cases**

Whenever a case tried in a district court is remanded by this court for a new
trial, it shall be reassigned by the district court for trial before a judge other
than the judge who heard the prior trial unless the remand order directs or
all parties request that the same judge retry the case. In appeals which are
not subject to this rule by its terms, this court may nevertheless direct in its
opinion or order that this rule shall apply on remand.

Faulds' appeal did not result in a reversal or vacature, nor was there a
remand.  Thus, this argument is meritless.

In any event, the Court has reviewed the cited transcripts, and concludes that
Faulds' characterizations of Judge McCuskey's comments are inaccurate.

At the hearing held by Judge McCuskey on July 20, 2007, there was
discussion regarding the potential penalties Faulds faced.  *See* Transcript of
Hearing Held July 20, 2007 [d/e 26], in Case No. 07-cr-20004.  When Faulds had

initially pled guilty, the parties underestimated the potential penalty for the

conduct.  *See id.*  In preparation for his 2007 sentencing hearing, Faulds learned

that the penalty could be higher.  *See id.*

Judge McCuskey allowed Faulds' request to withdraw his guilty plea

because he had inaccurate information regarding potential penalties when he pled

guilty, not because Judge McCuskey believed Faulds' assertions that the Assistant

Federal Public Defender had compelled him to plead guilty.  *See id.*  In discussing

potential penalties, Judge McCuskey incorrectly warned Faulds that he could

receive a life sentence, but he was corrected by the prosecutor, and Faulds was

informed of the correct potential penalties.  *See id.* at 21.  Judge McCuskey was not

threatening Faulds, but was rather advising him of potential penalties, and ensuring

that Faulds had the opportunity to make an informed decision.

At the status hearing held on August 20, 2007, Judge McCuskey, the parties,

and Faulds' father discussed efforts to secure retained counsel and Faulds' desire

to be released on bond.  *See* Transcript of Hearing Held on August 20, 2007 [d/e

63].  The Court could not locate anything in the transcript of that hearing that

would suggest that Judge McCuskey threatened Faulds.

At the sentencing hearing held on September 8, 2009, Judge McCuskey was

merely stating that (1) those who accept responsibility are dealt with more

leniently, (2) those who commit perjury and obstruct justice are dealt with more

harshly, and (3) individuals who commit very serious child pornography offenses deserve severe punishment. These statements are not threatening, and the way Judge McCuskey delivered them was not inappropriate.

### Ground 16—Appellate Counsel was ineffective because she failed to argue on appeal that an ICE special agent was improperly involved in jury selection

This ground for relief involves recasting Faulds' errors at trial as ineffective assistance of counsel by appellate counsel.

Looking at the merits, this claim is baseless. Faulds complains that S.A. Mitchell was involved in the investigation of the case, and was also involved in the jury selection, because he sat at counsel table and deliberated with the prosecutor regarding which jurors to challenge.

Faulds cites several cases for the proposition that law enforcement agencies/personnel cannot both investigate or initiate a criminal case and be involved in jury selection.

The Court has reviewed the cases cited and notes that the "involvement in jury selection" referenced in those cases did not refer to voir dire proceedings, but rather actually determining which individuals from the jurisdiction would be part of the jury venire. Most of the cases cited involved sheriffs whose departments both initiated a case and selected bystander jurors from the population at large (when the juror pool was depleted before a full jury was empaneled).

At Faulds' trial, S.A. Mitchell was not involved in determining which individuals would be part of the venire.

However, S.A. Mitchell was authorized to sit at counsel table and consult with the prosecutor during jury selection because he was the case agent, and acted as the representative of the client agency (ICE).  *Cf.* Fed. R. Evid. 615, Advisory Comm. Note (1974) ("Many district courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness. . . . The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter.  The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty.")

Faulds' claim is without merit.

### Ground 17—Appellate Counsel was ineffective because she did not argue that this Court failed to address Faulds' arguments regarding the sentencing factors set out in 18 U.S.C. § 3553

The Court has reviewed the entire record of all sentencing proceedings in this case and concludes that Faulds' claim is meritless.

Faulds' initial Sentencing Commentary [d/e 90] in Case No. 07-cr-20004, was written with the assistance of standby counsel, and contained a brief discussion of some of the sentencing factors.  The Commentary noted that the

Court must consider both "the nature and circumstances of the offense" and "the history and characteristics of the defendant." *Id.* at 1. Faulds noted that the offense conduct had been explored in depth during the trial, but Faulds' history and characteristics had not been examined in any depth. *Id.* Faulds noted that courts should consider the "parsimony provision"—that sentences should be "sufficient, but not greater than necessary to comply with" the purposes of sentencing. *Id.* at 2. Faulds noted that the purposes of sentencing can be summarized as retribution, deterrence, incapacitation, and rehabilitation. *Id.* at 2-3. Faulds then discussed these four principles at length. *See id.* at 3-7. However, the discussion of these principles was relatively abstract, without application to the case at bar. The Commentary did not further address the Section 3553(a) sentencing factors in any meaningful way.

Faulds' First Revised Sentencing Commentary [d/e 92] in Case No. 07-cr-20004, contained virtually all of the same arguments as the original version, with a few additional ones. Faulds addressed the need for the Court to avoid unwarranted sentencing disparities. Faulds acknowledged the possibility that he would be sentenced to a total of 360 months imprisonment, and gave examples where other defendants received less severe sentences for allegedly more severe conduct. *Id.* at 33-36.

Regarding the nature and circumstances of the offense, Faulds argued that his offenses were white collar offenses that did not directly harm anyone, especially in the community where he lived (Rankin, Illinois).  However, Faulds acknowledged that children are hurt indirectly by child pornography.

Faulds argued that the risk of recidivism was low because he did not engage in criminal activity while on bond during the pendency of the case.

Finally, Faulds argued that the approximately two years of stress and worry by Faulds and his relatives between the execution of the search warrant and the sentencing hearing had been part of his punishment.  Faulds argued that this anguish had already fulfilled many of the purposes of sentencing (such as retribution and deterrence) listed in Section 3553(a).

In making his claim, he excerpted a portion of Judge McCuskey's discussion of the sentencing factors.  *See* Motion [d/e 1, 1-1], pp. 78-80; *see also* Sentencing Transcript [d/e 105], pp. 77-80 (original source of Judge McCuskey's statements).  However, the excerpt does not paint the full picture.

Judge McCuskey indicated that he had read Faulds' sentencing commentary the night before the sentencing hearing.  *See* Sentencing Transcript [d/e 105], pp. 67-68.  Judge McCuskey addressed the arguments regarding sentencing disparities, indicating that although some defendants in other parts of the country receive

lenient sentences, stating that defendants in the Seventh Circuit generally do not get lenient sentences for child pornography offenses.  *See id.* at 70.

Judge McCuskey explained that his general approach on child pornography offenses was to impose more lenient sentences, and to not impose consecutive offenses, and that he probably would have followed that approach had Faulds accepted responsibility, not withdrawn his plea of guilty, and not committed perjury.  *Id.* at 71-72.  Judge McCuskey said, "Following March 27, 2007, you began to commit more crimes than just the two crimes you were ultimately convicted of.  You proceeded to obstruct justice.  You proceeded to multiple counts of perjury on multiple times in this court. . . . In the 21 years I have been a judge, I have not seen anybody proceed as recklessly as you did."  *Id.* at 72-73.  Judge McCuskey also addressed Faulds' trial defense—that he had been framed by the Government.  These issues arguably relate to Faulds' history and characteristics.

Judge McCuskey responded to Faulds' argument regarding the nature of the offense—that Faulds had not done harm to children.  Judge McCuskey pointed out that Faulds had knowingly distributed child pornography to minors.  *Id.* at 73-74.  He then addressed the severity and quantity of the child pornography involved in the case, and that Faulds had facilitated the distribution of child pornography all over the world.  *Id.* at 74-77.

32

Judge McCuskey then examined the parsimony provision, the nature and circumstances of the offense, the need to promote respect for the law, just punishment, adequate deterrence, protection of the public, and the kinds of sentences available. *See id.* at 77-79.

Judge McCuskey addressed some of the specific arguments raised by Faulds, including the statement that people in Faulds' hometown would like him to receive a lenient sentence, his request for a lenient sentence, and the request that the sentences be made to run concurrently to each other. However, he passed over other arguments in silence (e.g., Faulds has already been punished because he was anguishing over his fate while on bond for over a year).

Overall, Judge McCuskey thoroughly reviewed the relevant sentencing factors and fully articulated the reasons for imposing the sentence. He addressed Faulds' principal sentencing arguments. This claim for relief is meritless.

### Ground 18—Appellate Counsel was ineffective because she did not argue that the admission of "character evidence" was improper

Faulds objects to the introduction of a letter seized during the search of the home.

The letter was addressed to Faulds and was from an imprisoned sex offender. The author was asking for Faulds to supply him with hard-core pornography of people that were "short, flat, and young."

The Court concludes that the letter was relevant and properly admitted.

Appellate Counsel was not ineffective.

### Ground 19—Appellate Counsel was ineffective because she did not argue that Judge McCuskey incorrectly applied *Daubert* and Fed. R. Evid. 702 when allowing S.A. Mitchell testify as an expert

The Court notes that Judge McCuskey carefully examined this issue.  See

Trial Transcript [d/e 65], in Case No. 07-cr-20004, pp. 264-74.

Given the relevant standard of review on appeal, Faulds cannot show that

this issue would have altered the outcome of the case had Appellate Counsel raised

it.

### Ground 20— Appellate Counsel was ineffective because she did not argue that Faulds' due process rights were violated when Judge McCuskey denied Faulds' request for appointment of a network security expert of his choosing

This issue is fully addressed in Ground 13, above.  Appellate Counsel was

not ineffective and Judge McCuskey did not violate Faulds' rights.

This claim is meritless.

### Ground 21— Appellate Counsel was ineffective because she did not argue that Judge McCuskey abused his discretion when he limited Faulds' examination of S.A. Mitchell

The Court concludes that Faulds' claim is without merit and that Appellate

Counsel was not ineffective in this regard.

**Ground 22— Appellate Counsel was ineffective because she did not argue that the district court failed to provide notice to Faulds of its intent to, as conditions of supervised release, prohibit him from consuming alcohol and prohibit him from possessing materials that contained nudity or that were sexually arousing**

Faulds breaks this argument into its congruent pieces in Grounds 24 (alcohol) and Ground 25 (pornography).

The Court will address these issues in Grounds 24 and 25.

**Ground 23— Appellate Counsel was ineffective because she did not argue that the district court improperly limited questioning regarding sex offender bias during voir dire**

This claim is without merit.

The Court used the questions regarding sex offenses listed by Faulds in the Motion [d/e 1-1]. *See* Jury Selection Transcript [d/e 112], pp. 14-17, 21, in Case No. 07-cr-20004.

A number of biased jurors were excused at the outset of jury selection.

**Ground 24— Appellate Counsel was ineffective because she did not argue that the supervised release special condition regarding alcohol use involves a greater depravation than reasonably necessary to deter future criminal conduct and protect the public**

This claim is without merit.  Faulds has had serious issues with alcohol.  *See* Sentencing Transcript [d/e 104], p. 45, in Case No. 07-cr-20004 (Faulds admits that he "drank like a fish" until he lost interest in drinking at age twenty-eight); *see also* Presentence Investigation Report, ¶ 53, in Case No. 07-cr-20004.  The total

ban on alcohol is justified under these circumstances.  *See United States v. McKissic*, 428 F.3d 719 (7th Cir. 2005).

Appellate counsel cannot be ineffective for failing to raise a meritless claim. *Lilly v. Gilmore*, 988 F.2d 783 (7th Cir. 1993).

### Ground 25— Appellate Counsel was ineffective because she did not argue that the supervised release prohibitions on nudity and sexual arousing materials violates the First Amendment and involves a greater deprivation of liberty than necessary to deter future criminal conduct and protect the public

This issue was not raised on direct appeal.  Faulds' failure to raise the issue on direct appeal bars him from raising the issue for the first time via a collateral attack.  This claim is procedurally defaulted.  This procedural default is only excused if Faulds can show (1) a cause that excuses the default, and (2) actual prejudice from the errors that are alleged.  *See United States v. Frady*, 456 U.S. 152 (1982).

Faulds cannot show that Appellate Counsel's performance was deficient or that the outcome would have been different had the issue been raised and argued.

In any event, any prohibition on adult pornography is reasonable in this case given Faulds' history.  At trial, there was testimony that Faulds amassed a large collection of child pornography and that he spent virtually every free moment in his room, apparently viewing his pornography collection.

Accordingly, the claim will be denied.[5]

### Ground 26— Appellate Counsel was ineffective because she did not argue that the prosecutor's use of peremptory challenges as to prospective black jurors violated Faulds' due process and equal protection rights

*Batson v. Kentucky*, 476 U.S. 79 (1986) established that a prosecutor cannot use peremptory challenges to dismiss African-American jurors, unless he can provide a credible race-neutral reason for doing so. *Batson* has been interpreted broadly, and White defendants (like Faulds) have been able to make *Batson* challenges for over twenty years. *See Powers v. Ohio*, 499 U.S. 400, 402 (1991).

The Court takes this kind of challenge very seriously. *Batson* violations are unique, because they strike at the very core of our judicial system. *Batson* challenges can be raised for the first time on a Section 2255 motion, even without a claim of ineffective assistance of counsel. Accordingly, the Court will move directly to the merits of the claim without discussing any potential procedural barriers to raising this claim collaterally.

After thoroughly reviewing documents maintained by the Clerk's Office and the transcript of the jury selection proceedings, the Court concludes that there is absolutely nothing in the record to suggest that the prosecutor committed a *Batson*

---

[5] The Court is, of course, aware of the Seventh Circuit's decision in *United States v. Goodwin*, 717 F.3d 511 (7th Cir. 2013). The Court acknowledges that, based upon *Goodwin*, Faulds may be able to seek an amendment to this special condition of supervised release. On the other hand, Faulds has, according to the Bureau of Prisons website (http://www.bop.gov/iloc2/LocateInmate
.jsp), about twenty years before he will be released. Many child pornography offenders will be released between now and then, and this area of the law will continue to develop. These issues will be best addressed upon Faulds' release from the Bureau of Prisons.

violation, <u>because the prosecutor did not peremptorily challenge any African-American jurors</u>.  *See* Jury Selection Transcript [d/e 112], in Case No. 07-cr-20004.

The documents on file suggest that the prosecutor peremptorily challenged the following jurors: an Asian male, four White males, and two White females. *See id.* at 174-78.  An African-American male (Juror 123) served on the jury, and he was not challenged by the prosecutor.

An additional African-American male (Juror 145) was present for jury selection, but was not used, as the jurors and the alternates were selected before he could be subjected to individualized voir dire.  *See* Jury Selection Transcript [d/e 112], p. 183, in Case No. 07-cr-20004.

Accordingly, this claim is without merit.

### Ground 27— Appellate Counsel was ineffective because she did not argue that the prosecutor made improper and prejudicial statements during closing arguments

This claim is wholly without merit.

Faulds has excerpted in Motion [d/e 1-1] the allegedly inappropriate statements from the trial transcript.

The statements were not improper.

It is true that the statements were prejudicial, but they were not unjustly prejudicial.  The prosecutor merely described the evidence against Faulds.  Faulds

was guilty a very serious crime.  The evidence of his guilt was overwhelming.  In reality, even a neutral recitation of the facts would probably be prejudicial.

### Ground 28— Appellate Counsel was ineffective because she did not argue that young adults ages 18-30, Hispanics, and Asian-Americans were unconstitutionally underrepresented in the jury venire, in violation of Faulds' Sixth Amendment right to a fair cross-section of the community

Faulds again recasts his own performance at trial as the ineffectiveness of Appellate Counsel.

The Court again notes that prior to this § 2255 case, the jury selection proceedings were reported but not transcribed.  The trial transcript was prepared before the sentencing hearing, while Faulds' case was still pending before this Court.

Appellate counsel did not have the jury selection proceedings transcribed in preparing Faulds' appeal.

The Court concludes that appellate counsel's actions, or inactions, in pursuing these claims did not fall beyond the objective standard of reasonableness.

Given the overwhelming evidence of guilt in the case, and Faulds' vacillations regarding pleading guilty, going to trial, which attorney to use, and self-representation, it would not be reasonable for an appellate attorney to focus on this issue—that a white man in his mid-30s from a rural village in the northwest corner of Vermilion County, Illinois, was found guilty by a jury in Urbana, Illinois, that did not have enough Hispanics, Asian-Americans, or young adults.

It is unclear if this issue can even be brought for the first time on appeal, given statistical nature of the claim.  It appears that had this issue been brought for the first time on appeal, it would have either been subject to plain error review, *see United States v. Fernandez-Hernandez*, 652 F.3d 56, 66 (1st Cir. 2011), or it might not have been reviewed at all, *cf. United States v. Guy*, 924 F.2d 702, 707 (7th Cir. 1991) (court declined to hear for the first time on appeal a broad challenge to a state precinct districting scheme).  On plain error review it might have been possible for census data to be considered.  *See Fernandez-Hernandez*, 652 F.3d at 66.

In any event, Faulds suffered no prejudice, because he probably would not have succeeded on the merits of the argument on appeal.  Therefore, Appellate Counsel was not ineffective.

Under the Sixth Amendment, jury venires must be a fair cross section of the relevant community.  *See Duren v. Missouri*, 439 U.S. 357 (1979).  "[I]n order to establish a prima facie violation of the fair-cross-section requirement, a defendant must show: (1) the group allegedly excluded is a distinctive part of the community, (2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process."  *Id.* at 364.

Faulds supplied incorrect information in his Motion [d/e 1] regarding the demographics of the Urbana Division of this Court.

Faulds states the following:

> According to the 2009 New York Times Almanac edited by John W Wright, the census figures for the United States District Court for the Central District of Illinois, Urbana Division is as follows: Total population 179, 701; of that 179,701, 78.8 % are white, 11.2 % are Black, 6.5 % are Asian, 2.9% are Hispanic and 0.2% are Native American.  Movant had 39 people on his jury venire.  Out of that 39, Movant believes that at least 5 were black and the rest were White.  There were NO Asians and NO Hispanics and no one under 30 years of age on the jury venire.

Motion [1-1], p. 121.

<u>Faulds is wrong.</u>

As demonstrated below, there was one Asian juror, and at least two Hispanic jurors.  In addition, there was a juror under the age of thirty.[6]

Furthermore, it appears that Faulds' population information relates only to Champaign County, Illinois—the county where Urbana (the county seat) is located.

The population of Champaign County in 2000 was 179,669.  *See* Champaign County, Illinois, Wikipedia, http://en.wikipedia.org/wiki/ Champaign_County,_Illinois  (last visited Jan. 30, 2013).  "The racial makeup of the county was 78.78% White, 11.16 % Black or African American, 0.24% Native American, 6.45% Asian, 0.04% Pacific Islander, 1.34% from other races, and 1.99% from two or more races."  *Id.*

---

[6]  Juror 111 was 28 at the time of the time of jury selection, and she was excused from service by the Court.

This data is remarkably similar to that of Faulds, and suggests that Faulds' data related solely to Champaign County.

However, the Urbana Division embraces more than Champaign County. The Urbana Division includes the following counties: Champaign, Coles, Douglas, Edgar, Ford, Iroquois, Kankakee, Macon, Moultrie, Piatt, and Vermilion.  *See* C.D. Ill. L.R. 40.1 ("Assignment of Cases and Place of Filing"); C.D. Ill. Jurisdictional Map, available at http://www.ilcd.uscourts.gov/sites/ ilcd/files/New_District_ Map.pdf (last visited Jan. 30, 2012).

Central Illinois is not generally known as an area with substantial racial and ethnic diversity, and this is especially true in the more rural counties.

When a claim under *Duren* is brought, very detailed information has to be used to show underrepresentation.  The data presented for this kind of claim is usually supported by expert witnesses who have compiled the information, and render an expert opinion.

Often these experts have experience in statistics or demography.  Generally, a district court would not rely upon generalized population data.  Instead, the expert would prepare information reflecting the numbers from each group that are eligible to serve as jurors.  There are two main eligibility categories: age eligibility and service eligibility.  Age eligibility relates to a juror being old enough to serve

(eighteen years old or above).  Service eligibility relates to (1) being a citizen, (2) not being a felon, and (3) being able to understand the English language.

The Court has compiled some generalized statistics regarding racial and ethnic information for the eleven counties comprising the Urbana Division.

Of course, the Court recognizes that census data represents only an imperfect snapshot from the time that the census was conducted.  In this case, the Court has looked at census data from about two years after the Petitioner's trial took place (the 2010 Census).  Although that is not ideal, it is better than looking at data from almost eight years before the trial was held (the 2000 Census).

*Alleged Racial Underrepresentation*

As detailed above, Faulds has alleged that Asians were underrepresented in the jury venire.  The following chart shows general population information for the Urbana Division, but does not detail age eligibility or service eligibility.

### Racial Information from the 11 Counties
### of the Urbana Division (2010 Census)[7]

| County | White | African American | Asian | All other Racial Categories | Total Population |
|--------|-------|------------------|-------|-----------------------------|------------------|
| Champaign | 147,600 | 24,946 | 17,969 | 10,566 | 201,081 |
| Coles | 50,029 | 2,067 | 531 | 1,246 | 53,873 |
| Douglas | 19,113 | 58 | 83 | 726 | 19,980 |
| Edgar | 18,268 | 64 | 33 | 211 | 18,576 |
| Ford | 13,677 | 85 | 37 | 282 | 14,081 |
| Iroquois | 28,155 | 233 | 103 | 1,227 | 29,718 |
| Kankakee | 87,986 | 17,187 | 1,052 | 7,224 | 113,449 |
| Macon | 87,855 | 18,027 | 1,118 | 3,768 | 110,768 |
| Moultrie | 14,622 | 41 | 31 | 152 | 14,846 |
| Piatt | 16,393 | 58 | 51 | 227 | 16,729 |
| Vermilion | 67,323 | 10,571 | 564 | 3,167 | 81,625 |
| TOTAL: | 551,021 | 73,337 | 21,572 | 28,796 | 674,726 |

Based on this data, Asian people constitute 3.197% of the Division's population.

According to records maintained by the Clerk's Office, forty-four people were selected to participate as potential jurors for Faulds' trial, and had returned juror questionnaires. Forty jurors appeared at the Courthouse on February 25, 2008. The documents supplied by the Clerk's Office do not reflect the reasons why the four individuals did not appear. It is possible that the jury administrator excused the individuals for cause, or that they simply failed to appear. In any event, the Court will consider all forty-four individuals to be members of the venire for the purpose of addressing Faulds' claims of underrepresentation.

[7] Source: U.S. Census Bureau, 2010 Census Interactive Population Map, available at http://www.census.gov/2010census/popmap/index.php (last viewed Jan. 30, 2013). The category "All Other Racial Categories" includes the combination of the following racial categories used by the Census Bureau: American Indian or Alaska Native, Native Hawaiian or Pacific Islander, "some other race," and "two or more races."

Of the forty-four jurors who were called, only one was Asian[8]—meaning that the jury venire was 2.273% Asian.  This is slightly less than the general population of Asians in the Division[9]—3.197%.  However, for all practical purposes there is no difference, because 3.197% of forty-four is 1.40668.  So, even looking at very generalized general population data, one would expect roughly one Asian person out of forty-four summoned for jury duty, which occurred in this case.

Therefore, it does not appear that Asian people were underrepresented.

---

[8]  Juror 51.  He was removed by a peremptory challenge by the prosecution.
[9] Again, the Court is using generalized population data, which is not what would be needed to fully show a violation of the fair-cross-section requirement.  The Court is merely using this basic data to show that Faulds' assertions are baseless.

*Alleged Ethnic Underrepresentation*

## Ethnic Information from the 11 Counties of
## the Urbana Division (2010 Census)[10]

| County | Hispanic or Latino | Not Hispanic or Latino | Total Population |
|---|---|---|---|
| Champaign | 10,607 | 190,474 | 201,081 |
| Coles | 1,155 | 52,718 | 53,873 |
| Douglas | 1,210 | 18,770 | 19,980 |
| Edgar | 187 | 18,389 | 18,576 |
| Ford | 294 | 13,787 | 14,081 |
| Iroquois | 1,584 | 28,134 | 29,718 |
| Kankakee | 10,167 | 103,282 | 113,449 |
| Macon | 2,072 | 108,696 | 110,768 |
| Moultrie | 129 | 14,717 | 14,846 |
| Piatt | 167 | 16,652 | 16,729 |
| Vermilion | 3,441 | 78,184 | 81,625 |
| TOTAL: | 31,013 | 643,803 | 674,726 |

Based on this information, Hispanic or Latino people constitute 4.59% of the Urbana Division's population, while non-Hispanic people represent 95.41% of the Division's population.

The Court is unable to conclude how many Hispanic or Latino people were included in the venire.  Sixteen jurors failed to answer the Hispanic/Non-Hispanic question on their questionnaires.  Twenty-five stated that they were not Hispanic, while two responded that they were Hispanic.[11]

---

[10]  **Source: U.S. Census Bureau, 2010 Census Interactive Population Map, available at http://www.census.gov/2010census/popmap/index.php (last viewed Jan. 31, 2013).  Note that Hispanic or Latino is not a racial category.  Rather it is defined as an ethnicity.  The Census Bureau defines "Hispanic or Latino" as "[a] person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race."  See U.S. Census Bureau, Definition of Common Terms, available at http://www.census.gov/econ/sbo/ definitions.html (last viewed June 10, 2013).**

[11]  Jurors 61 and 82.

While the Court can probably assume that most of the sixteen who failed to respond to the ethnicity question are not Hispanic, the Court cannot conclude that none of the sixteen were Hispanic, even after considering last names.  Surnames are not a conclusive basis for determining Hispanic or Latino heritage.  *See, e.g.*, *Rodriguez v. Bexar County, Texas*, 385 F.3d 853, 866 n.18 (5th Cir. 2004); *United States v. Ortiz*, 897 F. Supp. 199, 203 (E.D. Pa. 1995) ("A person's surname is not a definite indicator.  Some last names of persons who may consider themselves Hispanic may not be or may not appear to be of Spanish derivation.  Conversely, a woman of admittedly non-Hispanic descent may take her husband's Hispanic surname upon marriage.").

Assuming that the only Hispanic jurors were those who so indicated on their questionnaires, it does not appear that Hispanics were underrepresented.

At least two members of the venire were Hispanic.  That is 4.545% of the venire.  The population of the Urbana Division is 4.59% Hispanic.

While the Court recognizes that general population data is not the ideal metric for determining a fair cross section claim, it is interesting that the venire in this case, with respect to Hispanic jurors, was off by no more than five one-hundredths of one percent.

Faulds' claim regarding underrepresentation of Hispanic jurors is without merit.

*C. Alleged Underrepresentation of Young Adults 18-30 Years of Age*

As detailed above, the first requirement of establishing a prima facie

violation of the fair-cross-section requirement, is that a defendant "show . . . that

the group alleged to be excluded is a 'distinctive' group in the community."

*Duren*, 439 U.S. at 364.

Faulds has cited some authorities for the proposition that young adults

eighteen to thirty years of age (as well as Hispanic people and Asian people) are a

distinctive group. However, upon review, those authorities do not support the

proposition that young adults 18-30 years of age are a distinctive group for the

purposes of fair-cross-section requirement.

In fact, the U.S. Court of Appeals for the Seventh Circuit has rejected

arguments very similar to those made by Faulds. *See Johnson v. McCaughtry*, 92

F.3d 585, 592-93 (7th Cir. 1996) (rejecting argument that persons age 18-25 are a

"distinctive group"); *Davis v. Greer*, 675 F.2d 141, 146 (7th Cir. 1982) (holding

that persons between the ages of 18 and 21 do not constitute a "distinctive group");

*cf. Silagy v. Peters*, 905 F.2d 986, 1010-11 (holding that people over 70, who were

excluded from jury service, did not constitute a "distinctive group").

In *Johnson*, the Court of Appeals noted that other circuits rejected this kind

of age-based claim:

> We are in good company in rejecting Johnson's claim that young
> persons constitute a distinctive group under Duren. Such age-based claims

48

have been frequently made, but have been rejected in every circuit that has considered them. *See, e.g., Barber v. Ponte*, 772 F.2d 982, 998 (1st Cir.1985) (rejecting 18-34 years as distinctive group); *Brown v. Harris*, 666 F.2d 782, 783-84 (2d Cir.1981) (rejecting 18-28 years as distinctive group), *cert. denied*, 456 U.S. 948, 102 S.Ct. 2017, 72 L.Ed.2d 472 (1982); *United States v. DiTommaso*, 405 F.2d 385, 391 (4th Cir.1968) (rejecting 21-29 years as distinctive group), *cert. denied*, 394 U.S. 934, 89 S.Ct. 1209, 1210, 22 L.Ed.2d 465 (1969); *United States v. Kuhn*, 441 F.2d 179, 181 (5th Cir.1971) (rejecting 21-23 years as distinctive group); *Ford v. Seabold*, 841 F.2d 677, 681-82 (6th Cir.) (rejecting 18-29 years as distinctive group), *cert. denied*, 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 334 (1988); *United States v. Olson*, 473 F.2d 686, 688 (8th Cir.) (rejecting 18-20 years as distinctive group), *cert. denied*, 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970 (1973); *United States v. Potter*, 552 F.2d 901, 905 (9th Cir.1977) (rejecting 18-34 years as distinctive group); *United States v. Test*, 550 F.2d 577, 590-93 (10th Cir.1976) (rejecting 21-39 years as distinctive group); *Wysinger v. Davis*, 886 F.2d 295, 296 (11th Cir.1989) (rejecting 18-25 years as distinctive group); *United States v. Diggs*, 522 F.2d 1310, 1317 (D.C.Cir.1975) (rejecting 21-30 years as distinctive group), *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976).

*Johnson*, 92 F.3d at 593.

Therefore, the Court concludes that young adults eighteen to thirty years of age do not constitute a "distinctive group," and that Faulds' claim of ineffective assistance of appellate counsel on this basis is without merit.

### Ground 29—Public Defender and CJA Counsel were ineffective because they failed to file a motion to dismiss the indictment as multiplicitous or as violating the prohibition against double jeopardy

This is a very odd claim.

Essentially, Faulds argues that the Public Defender and CJA Counsel were ineffective because they did not seek to dismiss the indictment on the same grounds that Appellate Counsel raised in the Seventh Circuit on appeal.  Since the

Seventh Circuit rejected this argument on appeal, Faulds cannot show prejudice on this claim.

### Ground 30— Public Defender and CJA Counsel were ineffective because they (1) failed to conduct a thorough investigation of the facts surrounding the charges, (2) failed to investigate possible defenses, (3) failed to adequately prepare for trial, and (4) failed to adequately consult with Faulds

Faulds claims that had the Public Defender and CJA Counsel not been ineffective, he would not have elected to represent himself.

The record does not support his claims of ineffectiveness, and these claims have largely been dealt with in other parts of this Order.

The record demonstrates that Faulds was provided, at no cost to himself or his family, two highly-qualified, effective, and seasoned attorneys who each had experience with federal child pornography cases. It appears that they were diligent and effective. He foolishly ignored their advice and represented himself. He also lied under oath during the pendency of his case.

Faulds has to live with the consequences of his decisions.

### VI.

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing Section 2255 Proceedings. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2).  "A petitioner makes a substantial showing where reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009) (quotation marks omitted).

Reasonable jurists would not dispute that Faulds is not entitled to relief. Accordingly, the Court will not issue a certificate of appealability.  If Faulds wishes to appeal this Court's ruling, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure 22.

## VII.

Faulds' Motion for Summary Judgment [d/e 16] will also be denied.  Faulds is correct that there are no genuine issues of material fact.  However, the pleadings and papers on file demonstrate that judgment should be entered in favor of the Government, not Faulds.

## VIII.

*Ergo*, Petitioner James Faulds' Motion to Vacate, Set Aside, or Correct Sentence [d/e 1] is DENIED.

The Petitioner's Motion for Summary Judgment [d/e 16] is likewise DENIED.

The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

ENTER: October 1, 2013

FOR THE COURT:                    */s/ Richard Mills*

Richard Mills
United States District Judge